James H. Rosenthal, Plaintiff, *v.* Norman B. Becher, Doing Business under the Firm Name and Style of Federal Fancy Fur Dyeing Company, Defendant.

Municipal Court of New York, Borough of Manhattan, Fourth District, June 16, 1936.

*Peter S. Kurtz*, for the plaintiff.

*Laurence N. Sincoff*, for the defendant.

Lewis (David C.), J.   James H. Rosenthal entered the employ of the defendant as a salesman on August 5, 1935, for a term stipulated to end December 31, 1935, at a fixed weekly wage of fifty dollars.   Apparently the defendant's business met the too common fate of hard sledding.   Payrolls became a problem.   The plaintiff did not receive his full salary.   Irregular payments soon yielded to no payments and on September 21, 1935, the defendant owed the plaintiff eighty-seven dollars and ten cents for back pay.   The plaintiff asked for it.   The defendant did not have it.   It was not a case of bad faith; rather bad fate dictated this event.   Wrongful intent played no part in this controversy.   A strike in the industry further handicapped the defendant's chances of eventual success. He frankly confessed to the plaintiff his inability to pay the overdue compensation or the accruing salary and suggested that he see if he could land another job.   Naturally, if not necessarily, the plaintiff went in search of a livelihood.   Between September twenty-first and December thirty-first he earned $139.   Under his contract with the defendant his pay for this period would have been $700.

He claims the difference, to wit, $561, and commenced his action to recover his damages on January 8, 1936.

The failure of the defendant to pay the plaintiff the weekly wages he had earned was a breach of the contract. This cannot be questioned. Was such a breach tantamount to a wrongful discharge? That is the question.

Counsel report that they have searched and scoured the reported cases and find only two cases in point.

" The plaintiff was clearly justified in his refusal to continue to work for the defendant upon defendant's failure to observe his obligation of payment (*Johnson* v. *Tyng*, 14 App. Div. 270, 275); but that is quite a different proposition from holding that such a breach on the part of the defendant was tantamount to a discharge (*Wheaton* v. *Higgins*, 90 N. Y. Supp. 1041). The plaintiff could have continued in defendant's employ and brought suit to recover the amount due him, or he might have rescinded the contract and refused to work thereunder. (*Wharton* v. *Winch*, 140 N. Y. 287; 35 N. E. 589.) Plaintiff's action operated as a rescission of the contract and a voluntary abandonment of the contract of employment." (*Barnett* v. *Cohen*, 110 N. Y. Supp. 835, 836.)

" The nonpayment of wages for the prior month was not tantamount to a discharge, and the recovery should have been limited to the actual wages earned." (*Wheaton* v. *Higgins*, 90 N. Y. Supp. 1041.)

On the strength of these citations the defendant claims victory. The court doubted the conclusiveness of these decisions. The thought that an unpaid wage earner forced to quit his work because he cannot collect his pay, forfeits his contract rights was unwelcome, if not unsound.

At the court's suggestion, willing counsel unearthed the original pleadings from the files of the City Court. (See pleading, City Court of City of New York, *Barnett* v. *Cohen*, [1908] *supra*.) It appeared from defendant's answer that the $180 demanded by the plaintiff was not made up of salary but of ten dollars weekly installments stipulated by the contract to be retained by the employer as security and to be held until the expiration of the contract. Such facts would, of course, lend an entirely different complexion and significance to the opinion quoted. And it is found that in *Wheaton* v. *Higgins* (*supra*) the employee was only hired by the month and he was only entitled to pay for a full month's work; so when he quit in the middle of the month the court refused to pay for the unexpired half.

That there should be a scarcity of precedents on an apparently simple question may be an unexpected, but, to some, not an unwel-

come fact. And while under such circumstances inferences may be drawn, they cannot decide the issue. Principles, not presumptions, are safer guides in any unsettled province of the law.

A recognized authority tells us:

" In a unilateral contract for one continuing performance or in a bilateral contract not yet wholly performed on either side, whether a breach is total or partial is necessarily a question of degree. Until the breach is of sufficient importance it is impossible that it should operate as a transformation of the whole contract into a right of action for damages." (3 Williston Cont. § 1290.)

" Certain rules of procedure qualify the right of an injured party to sue for breach of promise. In laying down these rules the law seems to have had two objects in view: *first*, the *restriction of suits to such a number as is absolutely necessary for purposes of justice* and, *second*, the minimizing of damages to the defendant so far as is possible, without denying to the injured party compensation for the wrong which he has suffered. Accordingly there can be but one action for a single breach. Non-performance by one party will give rise to a cause of action as soon as there is a day's delay in performance beyond the period stipulated for in the contract, for it is fundamental that for any actual failure to do as agreed the injured party has a remedy. But if the breach is not such as will involve the non-performance of the contract altogether, the damages recovered will be calculated on the assumption that the contract will be carried out in the future; that is they will be limited to the damage caused by breaches which had taken place at the date of the writ; whereas, if the breach at the time of suit has already been so serious as to involve the failure of the whole contract, damages based on the loss of the defendant's whole performance may be awarded to the plaintiff." (3 Williston Cont. § 1291.)

Substantially the same principles are indorsed in the Restatement of the Law of Contracts. " Will it be more conformable to justice in the particular case to free the injured party, or, on the other hand, to require him to perform his promise, in both cases giving him a right of action if the failure to perform was wrongful. In the one case damages are based on breach of the whole contract; in the other on the loss caused by the partial breach." (See Restatement, Contracts, § 275, at p. 403; §§ 276, 317.)

If the wages promised constitute the sole basis of damage, it would seem that their non-payment should be tantamount to a total breach of the contract.

" Without much discussion, the wages or salary promised has been made the sole basis of damage in the numerous actions by

employees that have been brought. On the whole, the conclusion reached in these cases seems sound, for in the absence of any proof to the contrary, it must be assumed that the parties agreed that the money promised by the employer should be the full equivalent of the services to be rendered by the employee." (3 Williston Cont. § 1359, at p. 2428.)

Continuing this line of reasoning, this learned author writes: "For breach of the employee's contract the master may recover damages either total or partial, according as the breach involves the dissolution of the relationship or not." (§ 1359, at p. 2429.)

I take it the inverse of the proposition is equally sound. If the employer could not insist on the employee continuing his service, why should the employee be obligated to do so? Appropriate judicial comment may be quoted: " The realist must at once feel, even if he does not see, that there is something wrong in such a paradox, especially when it is considered that the consequences to the plaintiff of a refusal to recognize the contract were exactly the same as an election to terminate. The reasons for the defendant's refusal to perform are not important." (*Chatham Plan, Inc.*, v. *Clinton*, 246 App. Div. 498, at p. 500, UNTERMYER, J.)

Nor is our jurisdiction bankrupt of judicial indorsement of such reasoning in a case like this one.

" It appears from the affirmative allegations in the answer that defendant's failure to pay plaintiff's weekly wages was due to lack of funds and that at no time after December 24, 1922, to the date of commencement of the action had the defendant been in funds. I think the refusal or default in payment of plaintiff's weekly wages was so substantial and important as in truth and in fairness to defeat the essential purpose of the parties. Failure to pay the weekly wages struck at the foundation of things; the wages meant the food and lodging and support for the plaintiff and his family, and it cannot be that the law regards his action in seeking other employment as a voluntary abandonment and rescission of the contract by plaintiff requiring him to remain at the call of his impecunious employer until the end of the five-year term without remuneration. " (*Berger* v. *Urban Motion Picture Industries, Inc.*, 206 App. Div. 379.)

Aside from the failure to pay the plaintiff his wages, his conduct and speech is presented as constituting a wrongful discharge. The law does not prescribe any set sentence to express a discharge — not the language, but the sense of what is spoken and surrounding circumstances, control the legal consequences. (*Ryan* v. *Mayor*, 154 N. Y. 328; *Sigmon* v. *Goldstone*, 116 App. Div. 490.)

An employee may be let out. He need not be put out. " Here is your hat, what is your hurry? " has always been treated as an invitation to leave.

The unsuccessful master regretted his financial embarrassment. He was too friendly as well as sorry to tell his servant to leave. He was too fair to expect his servant to stay without pay. He suggested that he look for another job. It is not putting a strained meaning on such statements to regard them as an expression of a desire on the part of the employer to terminate the contract.

The defendant does not suggest that the plaintiff had given any cause to warrant his discharge. This termination of his employment, therefore, worked a wrongful discharge and the defendant must be held answerable for the damages.

Judgment for the plaintiff. Ten days' stay.